

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960-6834
Tel 973 538-6890
Fax 973 540-9015
www.jacksonlewis.com
Richard J. Cino - Managing Partner

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DENVER, CO
DETROIT, MI

GRAND RAPIDS, MI
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX
INDIANAPOLIS, IN
JACKSONVILLE, FL
LAS VEGAS, NV
LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI
MINNEAPOLIS, MN

MORRISTOWN, NJ
NEW ORLEANS, LA
NEW YORK, NY
NORFOLK, VA
OMAHA, NE
ORANGE COUNTY, CA
ORLANDO, FL
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR
PORTSMOUTH, NH
PROVIDENCE, RI

RALEIGH-DURHAM, NC
RAPID CITY, SD
RICHMOND, VA
SACRAMENTO, CA
SAINT LOUIS, MO
SAN DIEGO, CA
SAN FRANCISCO, CA
SAN JUAN, PR
SEATTLE, WA
STAMFORD, CT
TAMPA, FL
WASHINGTON, DC REGION
WHITE PLAINS, NY

GREGORY T. ALVAREZ
Direct Dial: 973-451-6307
Email Address: alvarezg@jacksonlewis.com

December 13, 2013

**VIA ELECTRONIC CASE FILING**
Hon. Joel A. Pisano, U.S.D.J.
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street, Court Room 1
Trenton, New Jersey 08608

      Re: Ornelas v. Hooper Holmes, *et al.*
        <u>Civil Action No.: 12cv3106 (JAP) (DEA)</u>

Dear Judge Pisano:

  Defendants, pursuant to the Federal Rules of Civil Procedure and the Local Rules for the District of New Jersey, by and through their undersigned attorneys, hereby file the attached Supplemental Authority, *Allen v. The Payday Loan Store*, 2013 U.S. Dist. LEXIS 169971 (N.D. Ind. Dec. 3 2013) (attached as Exhibit A) and *Kelly v. Healthcare Services Group, Inc.*, 2013 U.S. Dist. LEXIS 149204 (E.D. Tx. October 16, 2013) (attached as Exhibit B) in response to Plaintiffs' Supplemental Authority in Support of Plaintiffs' Motion for Conditional Certification.

  In their supplemental submission, Plaintiffs offer recent case law in support of its ongoing effort to convince the Court that its role in this motion amounts to nothing more than simply reading the declarations submitted and accepting at face value the allegations offered. This is not so.

  Plaintiffs bring to the Court's attention the recent decision of *Hively v. Alice-Chalmers Energy, Inc.*, No. 13-106, 2013 WL 5936418 (W.D. Pa. Nov. 5, 2013). Plaintiffs assert that the *Hively* court, in granting the plaintiffs' motion for conditional certification, rejected the "defendants' request to apply a more rigorous 'intermediate' scrutiny to the class certification motion because of the limited discovery conducted – the same request Defendants make here." Plaintiffs go on to state that "this Court should reject Defendants' argument that Plaintiffs' burden is higher than the 'modest factual showing' required at stage 1." However, in making this argument, Plaintiffs ignore the vastly different facts in *Hively*, misconstrue Defendants' argument, and mis-state the applicable law.



First, with respect to the facts of *Hively*, the comparison between the evidence submitted and the potential size of the class could not be more different, and candidly is very illuminating. In *Hively*, the plaintiffs offered five declarations to support notice to a class of approximately thirty (30) current and former supervisors. Of these thirty (30), thirteen (13) were either named plaintiffs or had filed opt-ins. By comparison, here Plaintiffs ask this Court to provide notice to **several thousand paramedical examiners, on a nationwide basis**. Plaintiffs make this request based only on the declarations of two (2) named Plaintiffs and six (6) additional declarants. Moreover, Defendants have submitted significant evidence calling into question the self-serving evidence offered by the two named Plaintiffs and other declarants. For example, as set forth fully in our moving papers, some of the declarants are time-barred, and others have no claim for overtime based simply on the face of their declaration.[1] Among other things, these deficiencies leave only one location with even arguably a viable potential declarant. None of the declarants here have opted into this case.[2] Based on these facts, any reliance on *Hively* is dubious, at best.

Second, Plaintiffs rely on *Hively* ostensibly to provide further understanding of the modest factual showing standard adopted by the Third Circuit in *Symczyk v. Genesis HealthCare Corp.*, 656 F. 3d. 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). However, the substance of Plaintiffs arguments have all along been more akin to the "substantial allegations" test expressly rejected by *Symczyk*, not the modest factual showing standard. Specifically, Plaintiffs have steadfastly urged this Court to consider nothing more than the self-serving assertions made in the eight (8) declarations offered to compel notice to several thousand paramedical examiners. In doing so, Plaintiffs ask this Court to ignore substantial evidence in the form of deposition testimony of Plaintiffs or other data regarding the declarants (not competing declarations) which cast serious doubt on the reliability of the self-serving evidence offered and/or provides additional information ignored by Plaintiffs demonstrating the true nature of Plaintiffs' claims. This additional evidence is directly germane to whether Plaintiffs can demonstrate the modest factual showing they are required to establish.

Contrary to Plaintiffs' insistence, this Court is not required to ignore evidence which is before it. Doing so does not equate to applying a higher "intermediate" standard. Indeed, even at the modest factual showing stage, district courts in the Third Circuit have considered contrary testimony given by named Plaintiffs (as opposed to other competing declarants) which contradicts the self-serving declarations offered by Plaintiffs. *See, e.g., Hall v. Guardsmark*, 2012 U.S. Dist. LEXIS 116129, *34-35 (W.D. Pa. August 17, 2012). Moreover, the supplemental authority offered by Defendants makes this point abundantly clear. Specifically, in *Allen*, the Court expressly stated that, although the modest factual showing standard was lenient, it was not a "mere formality." *Allen*, 2013 Dist LEXIS 169971, *2. In particular, the *Allen* court offered the following:

---

[1] Defendants requested but were denied the opportunity to depose some or all of the declarants.
[2] Accordingly, in *Hively*, 43% of the potential class members already opted-in. By contrast, here significantly less than 1% of the potential opt-ins (which Plaintiffs estimate to be in the thousands) have opted-in.



Attorneys at Law
Joel A. Pisano, U.S.D.J.
*Ornelas v. Hooper Holmes, et al.*
Civil Action No.:12cv3106
December 13, 2013
Page 3

> Once proffered, an affidavit is still subject to scrutiny. Where a court is provided with evidence contradicting a plaintiff's claims, the court "will not 'stick its head in the sand' and ignore that evidence." Indeed, "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a class action because the class members are not similarly situated."

*Id.* (emphasis added and citations omitted) (motion for conditional certification denied because modest factual showing not met).

Third, in *Kelly*, the court made clear that it is not enough to simply point to any "common policy or plan." Rather, "[t]he fundamental inquiry is whether the plaintiffs show 'some identifiable facts or legal nexus that bind the claims so that hearing the cases together promotes judicial efficiency." *Id.* at *6. In *Kelly*, the court denied plaintiffs' motion for conditional certification of a proposed nation-wide class because "[t]he affidavits from former employees working in only three states do not fairly and sufficiently represent the situations of other employees located throughout all forty-eight states[.]" *Id.* at *8.

Defendants appreciate the Court's consideration of the above.

Very truly yours,

JACKSON LEWIS P.C.

Gregory T. Alvarez

GTA:pmp

cc: Andrew Frisch, Esq. (via email & ECF; w/encl.)
    Angeli Murthy, Esq. (via email & ECF; w/encl.)
    James M. McDonnell, Esq. (via email & ECF; w/encl.)

4841-3195-9063, v. 1

**Exhibit A**



4 of 48 DOCUMENTS

SYBRINA ALLEN, RAVON LEWIS, ARNITRICE MANCE, ISMAEL GOLDEN, JOVITA PEPPERS, BERNADETTE HILL, and MALAYA GULLY, on behalf of themselves and all others similarly situated, Plaintiffs, v. THE PAYDAY LOAN STORE OF INDIANA, INC., d/b/a PLS, and STEVEN LYONS, individually, Defendants.

CIVIL NO. 2:13cv262

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA

2013 U.S. Dist. LEXIS 169971

December 3, 2013, Decided
December 3, 2013, Filed

**COUNSEL:** [*1] For Sybrina Allen, on behalf of herself and all others similarly situated, Ravon Lewis, on behalf of herself and all others similarly situated, Arnitrice Mance, on behalf of herself and all others similarly situated, Ismael Golden, on behalf of himself and all others similarly situated, Jovita Peppers, on behalf of herself and all others similarly situated, Bernadette Hill, on behalf of herself and all others similarly situated, Malaya Gully, on behalf of herself and all others similarly situated, Plaintiffs: Kevin C Smith, LEAD ATTORNEY, Smith Sersic, Munster, IN; Marissa J McDermott, LEAD ATTORNEY, McDermott Law Office, Highland, IN.

For The Payday Loan Store of Indiana Inc, doing business as, PLS, Steven Lyons, individually, Defendants: Andrew M McNeil, Gregory W Guevara, Philip R Zimmerly, LEAD ATTORNEYS, Bose McKinney & Evans LLP - Ind/IN, Indianapolis, IN.

**JUDGES:** William C. Lee, United States District Judge.

**OPINION BY:** William C. Lee

**OPINION**

OPINION AND ORDER

This matter is before the court on a motion to conditionally certify class, order disclosure of putative class members' names, approve class notice, and facilitate class notice, filed by the plaintiffs on July 31, 2013. The defendants, The Payday Loan [*2] Store of Indiana, Inc., d/b/a/ PLS ("PLS"), and Steven Lyons ("Lyons"), filed their response on September 19, 2013, to which the plaintiffs replied on September 26, 2013.

For the following reasons, the plaintiffs' motion will be denied.

Discussion

Plaintiffs are former and present employees of PLS. Plaintiffs allege that wages were earned but not paid in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*. The class[1] plaintiffs seek to certify is defined as follows: "all persons who have been employed as hourly employees by Defendants for any period of time from three years preceding the Court's order

approving conditional certification of the collective action, at any of these locations: 3765 Broadway, Gary, Indiana, 1402 E. Columbus Drive, East Chicago, Indiana, 6124 Broadway, Merrillville, Indiana, and 792 Broadway in Gary, Indiana, and who have not been paid for all hours worked." (Hereinafter, "the Class").

> 1   Technically speaking the Plaintiffs are not seeking to certify a class action but are seeking to certify a "collective action". Class actions are governed by *Rule 23 of the Federal Rules of Civil Procedure* whereas collective actions under the FLSA are not Rule 23 [*3] actions. An FLSA plaintiff may only bring a "collective action" on behalf of other "similarly situated" employees. *29 U.S.C. § 216(b)*; *Does v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000)*.

The FLSA allows an employee to maintain a collective action "for and on behalf of himself . . . and other employees similarly situated." *29 U.S.C. § 216(b)*. Because the FLSA does not explain what it means to be "similarly situated," a majority of federal courts have adopted a two-step approach to fill the gap. *Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008)*; *Biddings v. Lake County, No. 2:09-CV-38-PRC, 2009 U.S. Dist. LEXIS 61486, 2009 WL 2175584, at *2 (N.D. Ind. July 15, 2009)*. Under the first step of the analysis, a plaintiff is required "to make a modest factual showing that he and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law." *Id.* Put another way, a plaintiff must "demonstrate a factual nexus that binds potential members of a collective action together." *2009 U.S. Dist. LEXIS 61486, [WL] at *3* (citation omitted). If the plaintiff meets that burden, the court may authorize that notice be sent to the other putative class members to determine whether [*4] they want to "opt in" to the action. *Id.* The second step occurs at the close of discovery. At that time, "a defendant can move to dismiss the opt-in plaintiffs in light of the record developed during discovery." *Id.*

The "modest factual showing" required at the first step of the proceedings may be lenient, but it is "not a mere formality." *Biddings, 2009 U.S. Dist. LEXIS 61486, [WL] at *2*. "[A] court will not certify based on plaintiffs' say-so alone." *Hadley v. Journal Broadcast Grp. Inc., No. 11-C-147, 2012 U.S. Dist. LEXIS 19452, 2012 WL 523752, at *1 (E.D. Wis. Feb. 16, 2012)*. Instead, to meet their burden, Plaintiffs must provide evidence via "an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy." *Biddings, 2009 U.S. Dist. LEXIS 61486, 2009 WL 2175584, at *3* (citation omitted). Once proffered, an affidavit is still subject to scrutiny. Where a court is provided with evidence contradicting a plaintiff's claims, the court "will not 'stick its head in the sand' and ignore that evidence." *See Hawkins v. Alorica, 287 F.R.D. 431, 441 (S.D. Ind. 2012)*. Indeed, "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class [*5] only to later determine that the matter should not proceed as a class action because the class members are not similarly situated." *Id.* (citation omitted).

The Plaintiffs assert that the complaint and declarations filed with this court evidence a pattern by which PLS purposefully denied Plaintiffs and other PLS employees their rightful wages by forcing them to work while not keeping a record of those hours, and not compensating them for that "off the clock" time.

The complaint sets forth the following allegations. PLS operates a number of locations in Indiana, including the locations at which the Plaintiffs worked. [Compl. [DE 1] ¶10.] Lyons was acting as a manager for PLS and, thus, was an employee and agent of PLS, acting in the course of his employment. [Compl.¶11.] Each of the seven Plaintiffs worked for Defendants, and were full-time hourly employees during their entire employment (with the exception of Bernadette Hill who spent approximately one year of her employment as a salaried employee.)[Compl. ¶¶ 17, 19, 41, 44, 58, 59, 72, 73, 84, 86,105, 107, 121, 122.]

Several of the Plaintiffs have signed declarations in support of the motion to certify. In her declaration, Sybrina Allen [*6] ("Allen"), asserts that she worked as a full-time employee for PLS, from approximately February 28, 2011 to August 24, 2012, (Allen Decl. at ¶1,) as a Customer Service Representative (known as a "CSR") and as a Supervisor. [Allen Decl. at ¶2.] Allen worked at PLS's stores located at 3765 Broadway, Gary, Indiana and 6124 Broadway, Merrillville, Indiana. [Allen Decl. at ¶2.] Allen asserts that, during her entire employment with PLS, the employee time-keeping system was the same: the Store Manager would make out schedules; the schedules would be approved by the

District Manager; and employees would clock in with a biometric fingerprint machine. At the end of the shift, employees would clock out of the biometric fingerprint clock. [Allen Decl. at ¶6.] Allen claims that during her entire employment with PLS, she regularly worked after clocking out. [Allen Decl. at ¶7.] Allen further asserts that the PLS store managers knew that PLS hourly employees worked "off the clock". Allen claims that she heard store managers tell her and other hourly employees to clock out and then to finish their work. Much of this work was done after the employee clocked out of the biometric fingerprint clock. [Allen [*7] Decl. at ¶8.]

According to Allen most of the "off the clock" work occurred at the end of the shift, and included: counting the cash drawers; "consolidating" the store (getting entire day's balance so that the next day's shift began at "zero"); figuring out cash shortages; preparing reports; balancing check reports; figuring out check errors; scanning checks; checking bill payments to utilities; making sure prepaid debit cards matched the ledger; making sure the Western Union payments were correct; and filling out any other necessary paperwork. [Allen Decl. at ¶9.] Allen states that these "off the clock" duties at the end of her shift took anywhere from 15 minutes to two hours, depending on how much work needed to be done. [Allen Decl. at ¶9]

Allen states that she also observed other PLS hourly employees working off the clock at the ends of their shifts. These employees include: Ravon Lewis; Ismael Golden; Arnitrice Mance; Romeshia Lambert; Jovita Peppers; Bernadette Hill; Tiffany Reedus; Sheila Walls; Malaya Gully; Theo Gordy; Cheri Terranova; Jasmine Coleman; Emily Phinessee; Krystal Gamez; and Dasha Cast. [Allen Decl. at ¶10.] Six of these fifteen people are named Plaintiffs in this [*8] case who have made their own allegations against the defendants for the same violations of law that Allen alleges.

Allen's states that PLS store managers would regularly tell Allen and other PLS hourly employees that any overtime had to be pre-approved, and that PLS could not afford to pay overtime. [Allen Decl. at ¶11.] Allen further states that managers would often instruct Allen and other hourly PLS employees to clock out at the end of their shift and to finish their work. [Id.] Allen contends that store managers also observed PLS hourly employees, including Allen, working after they had clocked out. [Allen Decl. at ¶11.] According to Allen, the store managers who knew Allen and other PLS hourly employees were working off the clock included Rodney Moore and Eduardo Perez. [Allen Decl. at ¶12.]

Allen states that on at least one occasion, around June 2012, Allen complained to Lyons, her District Manager, about the fact that she and other employees were working off the clock at the end of their shifts. Lyons told Allen that this complaint was "the least of his worries", and that he would "look into it." He also told Allen, "Let me worry about that." [Allen Decl. at ¶13.] Allen and other [*9] PLS hourly employees were told by PLS managers that they had to get approval for overtime in advance, and that if they did not, they would not get paid overtime. [Allen Decl. at ¶15.] Page 31 of Defendants' 2008 Employee Manual, and page 11 of Defendants 2012 Employee Manual state that, "(o)vertime work by hourly employees must be authorized in writing, in advance by your Supervisor."

Allen states that even though the store had a policy that overtime had to be pre-approved, in actuality, this policy was never followed. No prior approval was ever given. Instead, the company would determine at the end of the pay period whether there was money for overtime, and if there was, employees would get some overtime pay. [Allen Decl. at ¶17.] Those occasional overtime payments, however, were paid in arbitrary amounts and did not compensate Allen, or other PLS hourly employees, for all overtime hours worked. [Allen Decl. at ¶18.]

While Allen worked more "off the clock" hours as a Supervisor than as a CSR, she worked off the clock in both roles, and she observed that this was also true of the other PLS hourly employees. [Allen Decl. at ¶19.]

Another plaintiff, Jovita Peppers ("Peppers"), has also [*10] submitted a declaration in support of the motion to certify. Peppers worked as a full-time, hourly employee for PLS from approximately November 22, 2010 to November 27, 2012. [Peppers Decl. at ¶¶1-3.] She worked at the following PLS locations: 1402 E. Columbus Drive, East Chicago, Indiana; 3765 Broadway, Gary, Indiana; and 6124 Broadway, Merrillville, Indiana, as both a CSR and as a Supervisor. [Peppers Decl. at ¶¶2, 5.]

Peppers' declaration avers the same time-keeping system as Allen's, namely that employees would clock in and out on a biometric clock. [Peppers Decl. at ¶6.] Like Allen, Peppers also states that she regularly worked after

clocking out, (Peppers Decl. at ¶7,) and that she and other employees did so because they were told to do so by their managers. [Peppers Decl. at ¶¶8, 11.]

Peppers states that she observed that Malaya Gully (CSR); Theo Gordy (in various positions); Ismael Golden (CSR) (a plaintiff in this present case); Sheila Walls (CSR); Romesha Lambert (CSR); Monica Mixon (CSR); Tamika Scott (CSR); Amanda Guadalupe (CSR); Bria Turner (CSR); Nakeya Baines (Supervisor); Taquila Waxton (Supervisor); and Michelle Amacker (Supervisor) all worked after clocking out of [*11] the biometric clock. [Peppers Decl. at ¶10.] According to Peppers, most of the "off the clock" work occurred at the end of the shift. The kind of work that Peppers and other PLS hourly employees would perform while off the clock included: "consolidating" the store; figuring out cash shortages; preparing reports; balancing check reports; figuring out check errors; scanning checks; checking bill payments to utilities; making sure prepaid debit cards matched the ledger; making sure the Western Union payments were correct; and filling out any other necessary paperwork. [Peppers Decl. at ¶9.]

Peppers claims that PLS store managers observed Peppers and others working while off the clock, (Peppers Decl. at ¶11,) but told them that any overtime had to be pre-approved, and that PLS could not afford to pay overtime. [Peppers Decl. at ¶15.] These store managers included Rodney Moore (from the Merrillville, Indiana store), Nicole Thomas (from the Gary, Indiana store), and Dolores Campos (from the East Chicago, Indiana store). [Peppers Decl. at ¶12.]

Peppers also states that on several occasions Rodney Moore talked to Peppers about the importance of keeping compensation costs down. [Peppers Decl. [*12] at ¶13.] Peppers also states she heard Lyons telling managers Dolores Campos, Nicole Thomas, and Rodney Moore, that they had to keep compensation costs down. [Peppers Decl. at ¶14.]

Peppers alleges, as does Allen, that PLS's overtime pre-approval policy was never actually followed, and that small overtime payments would be given to Peppers and others in arbitrary amounts, not in an amount to compensate them for their overtime. [Peppers Decl. at ¶¶ 17-19.] Also, Peppers states that although she worked more "off the clock" hours as a Supervisor than as a CSR, she worked off the clock in both roles, and observed that this was also true of the other PLS employees. [Peppers Decl. at ¶20.]

Plaintiff Bernadette Hill ("Hill") has also submitted a declaration in support of the motion to certify. Hill states that she worked as a full-time employee for PLS, from approximately October 31, 2006 to March 15, 2013. [Hill Decl. at ¶1.] During her employment with PLS, she worked at 1402 E. Columbus Drive, East Chicago, Indiana; 3765 Broadway, Gary, Indiana; and 6124 Broadway, Merrillville, Indiana; and at 792 Broadway in Gary, Indiana. [Hill Decl. at ¶2.]

Hill worked for PLS as Supervisor, Assistant Manager, [*13] and Store Manager. [Hill Decl. at ¶3.] During her entire employment with PLS, she was paid on an hourly basis, except during the period she was salaried, (approximately November 2010 until approximately January, 2012). [Hill Decl. at ¶4; generally, Complaint (DE 1).] Like all of the other plaintiffs, Hill used a biometric fingerprint machine to clock out at the end of her shifts, and like them, she also frequently worked after clocking out. [Hill Decl. at ¶6-7.] She did not work off the clock while at the Columbus Drive location, but she did at the other three locations. [Hill Decl. at ¶7.]

Hill states that she was told by managers to clock out at the end of her shift and finish her work. [Hill Decl. at ¶8-9.] Hill further states that she heard managers says this to Tiffany Reedus and Sheila Walls (putative plaintiffs); and to Arnitrice Mance and Jovita Peppers (current plaintiffs). [Hill Decl. at ¶9.] The work that Hill performed while off the clock was essentially the same as the work performed by Peppers and Allen. [See Hill Decl. at ¶10.] Hill contends she observed other employees working after clocking out, including at least nine people who are not parties to this case. Further [*14] Hill states that she personally heard Sheila Walls and Tiffany Reedus complain to store managers, Rodney Moore and Eduardo Perez, about being made to work off the clock. They would complain about not being able to close their customer care windows earlier so that they could finish their work before the shift ended. [Hill Decl. at ¶16.] Hill also complained to store managers about being forced to work off the clock. [Hill Decl. at ¶17-18.] According to Hill, the managers answered that employees should simply work more quickly. [Hill Decl. at ¶19.] Hill observed that Rodney Moore would write up supervisors if their CSRs did not clock out at the end of their shifts. [Hill Decl. at ¶25.]

Hill states that she took her concerns to Lyons, telling him that employees were working off the clock and not getting paid for that time. [Hill Decl. at ¶20.] His answer was that PLS could not afford to pay overtime and that overtime had to be pre-approved. [Ibid.] Hill states that she was told by PLS managers that overtime had to be approved beforehand. [Hill Decl. at ¶¶22, 27.] Hill claims that as Store Manager she would receive emails from Steven Lyons stating store managers were not to pay overtime. [*15] [Hill Decl. at ¶23.] Overtime and compensation costs were an important issue to Lyons and he mentioned them frequently. [Hill Decl. at ¶24.] Hill states that she would occasionally get small overtime payments that were not commensurate to the actual hours worked. [Hill Decl. at ¶27-29.]

The Plaintiffs assert that the remaining four plaintiffs allege facts in the complaint that are similar to those asserted in the declarations discussed above. They each allege that managers instructed them to work off the clock, that managers knew they were working off the clock, and that any small amount of overtime pay they received was arbitrary and not in full compensation for time worked.

As noted above, before this Court may conditionally certify a collective action, Plaintiffs must proffer evidence to back their claims that PLS enacted a common practice affecting similarly situated employees that violates the FLSA. The defendants contend that the Plaintiffs have failed to meet their burden. In support of their motions, Plaintiffs rely solely upon the declarations of Allen, Hill, and Peppers. They identify 16 other PLS employees and state generally that they "observed" those other employees working [*16] off the clock. The defendants note that seven of the employees the Plaintiffs have identified as having been forced to work off the clock have provided declarations attesting that, in fact, they did not work off the clock and were paid for all hours they worked, including overtime. Likewise, the managers of the four stores in question -- three of whom previously worked as hourly employees for PLS -- have submitted declarations testifying that they did not work off the clock as hourly employees and that they are not aware of employees in their stores working off the clock. Thus the defendants argue that the Plaintiffs do not have sufficient knowledge of the work experience of their peers to establish a claim of an unlawful, common practice. The defendants maintain that even the Plaintiffs' own declarations rebut their claim, as Hill admits she did not work off the clock while employed at two of the four stores at issue. Moreover, according to the defendants, the named Plaintiffs to this action have been recorded on surveillance video consistently clocking out at the end of their shifts and immediately leaving the store. Defendants assert that the security video, recorded months before [*17] the lawsuit was filed and before PLS even had notice of the Plaintiffs' claim, directly rebuts at least three named Plaintiffs' unsworn allegations that they were regularly required to work off the clock to complete tasks.

The defendants have also informed the court that PLS has a written policy that (1) expressly prohibits off-the-clock work and (2) provides for overtime to be paid in compliance with the FLSA. The defendants argue that this evidence demonstrates a common policy on the part of PLS to comply with the FLSA, not to violate it. *See MacGregor v. Farmers Ins. Exchange*, No. 2:10-cv-03088, 2011 U.S. Dist. LEXIS 80361, 2011 WL 2981466, at *3-4 (D.S.C. July 22, 2011) (**denying** plaintiff's motion for **conditional certification** when defendant's policy did not violate the FLSA). The defendants argue that the Plaintiffs' personal observations lack specifics and, when compared to the evidence offered by Defendants, provide zero confidence that there was ever a common policy or practice regarding off-the-clock work that deviates from that set forth in the Employee Manual.

The defendants argue that the personal observations of Allen, Hill and Peppers to show PLS had an unlawful practice requiring employees to work [*18] off the clock is not enough evidence to satisfy their burden for conditional class certification. As noted above, Allen, Hill and Peppers testified that they collectively observed sixteen employees other than the named Plaintiffs working off the clock, including specifically Nakeya Baines, Jasmine Coleman, Theo Gordy, Monica Mixon, Tiffany Reedus, Tanika Scott and Sheila Walls. Defendants have submitted the declarations of those seven employees in which they deny every single claim of unlawful activity allegedly observed by Allen, Hill and Peppers. Defendants argue that these declarations undermine any reasonable inference that the Plaintiffs have actual knowledge of the alleged violations.

To meet their burden, Plaintiffs "may not avoid the requirement of demonstrating to the Court a modest factual showing of support for their claim that they and

the putative class were subject to a common unlawful practice by vague assertions that they 'understood' this to be true." *Adair v. Wis. Bell, Inc.*, No. 8-C-280, 2008 U.S. Dist. LEXIS 68942, 2008 WL 4224360, at *10 (E.D. Wis. Sept. 11, 2008). "[I]f declarations in support of conditional certification are not required to be more probative than 'bare allegations . . . the [*19] requirement of factual support would be superfluous.'" *Id.* (citation omitted). Rather, "to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees [sic] job duties, pay structures, hours worked, and whether they were paid for overtime hours." *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2013 U.S. Dist. LEXIS 110383, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013). Such actual knowledge can be shown through first-hand observations or conversations with coworkers. *Id.* However, the court must be satisfied that the facts provided by the plaintiffs allow for the reasonable inference that the plaintiffs actually observed other employees being subjected to the company policy they contend is unlawful. *See id.* (disallowing conditional certification where plaintiffs lacked personal knowledge of their peers' employment experiences).

The Defendants argue that Allen, Hill and Peppers fail to provide details regarding what exactly they observed those employees doing off the clock. They do not allege, for example, that they observed any of these employees clocking out and then returning [*20] to work, nor do they identify the types of work these employees allegedly performed after clocking out. And, as noted, seven of those employees have submitted declarations testifying that they never worked off the clock, nor were they asked to do so, and that they were properly paid for all the time worked, including overtime. The defendants contend that this evidence is overwhelmingly corroborated by the declarations of the managers of the four PLS stores at issue, the human resource manager, and Lyons, and that this evidence undermines the very foundation of Plaintiffs' testimony.

The Defendants further claim that Plaintiffs' own declarations contradict each other, further undermining the "common practice" claim. In her account, Hill acknowledges: "I did not work off the clock during the approximately three months I worked at the East Chicago location." (Hill Decl., ¶ 7.) Peppers also worked at the East Chicago location, but she claims a systematic off-the-clock policy was in place while she was at that store. (*See* Peppers Decl., ¶¶ 6-12.) The defendants point out that even if Hill and Peppers worked at the store at different times (their declarations are unclear as to when they worked [*21] there), Dolores Campos has been the store manager at the East Chicago store for approximately 16 years. (Campos Decl., ¶ 2.) It is illogical that if there were an unlawful policy in place, Hill would never work off the clock but Peppers would "regularly work[] after clocking out" under the same manager. (Peppers Decl., ¶¶ 7, 12.) Moreover, although not referenced in her declaration, Plaintiffs also allege in the Complaint that Hill did not work off the clock at the 792 Broadway store. (Complaint, ¶ 109).

The defendants claim that they have further evidence to show Plaintiffs have not met their burden of demonstrating a common unlawful practice. While it only goes back a period of months prior to this lawsuit having been filed, PLS maintains surveillance video that the defendants contend provides a reliable account of whether employees actually performed work after clocking out. (Rodney Moore Decl. ¶ 13).

The "Digital Witness" security video reviewed by Moore covers a period from mid-January 2013 to mid-April 2013 at the Merrillville store -- all before PLS received any notice of the claims in this lawsuit. (Moore Decl. ¶ 15). According to Moore, rather than showing a common practice of [*22] requiring off-the-clock work, the 35 shifts involving four of the named Plaintiffs reviewed by Moore actually show exactly the opposite. Moore states that the video reflects that the named Plaintiffs regularly left the store less than 10 minutes after clocking out, and in most cases within five minutes. Of the few exceptions to that, Moore testified that he observed their activities and saw that they were not working, but rather were talking on the cell phone, talking to other employees, using the restroom, or putting on winter clothes. Indeed, only one of the 35 shifts identified by Moore involved the employee remaining on site at least 15 minutes (the minimum period of off-the-clock work alleged by the Plaintiffs), and on that occasion Ismael Golden was waiting for a ride -- not working. The defendants contend that this video evidence raises serious red flags about the Plaintiffs' claim that there was a district-wide policy that required them regularly to work 15 minutes or more after clocking out.

In their reply, the Plaintiffs request that the court

ignore "happy camper" declarations, resolve all evidentiary conflicts in their favor, and ignore the Moore declaration insofar as it [*23] discusses the unexamined surveillance videos. The Plaintiffs correctly state that at this stage the court is to employ a lenient interpretation of the term "similarly situated", and "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Madden v. Corinthian Colleges, Inc. 2009 U.S. Dist Lexis 115331, *5 (N.D. Ill. Dec. 8, 2009).* The core questions here are whether the plaintiffs have provided "substantial allegations" and shown victims of a "single decision, policy, or plan."

With respect to the "substantial allegations" question, the court finds that the Plaintiffs have raised only vague allegations that simply cannot be considered "substantial". While the Plaintiffs generally allege that they and the putative plaintiffs were required to do a variety of tasks "off the clock", there is no substantive allegation as to which employee, if any, was required to do which task and when. Such vagueness cannot support a class certification especially in light of the declarations by seven of the putative class members that they were not ever required to work off the clock. Likewise the Plaintiffs' allegations [*24] with respect to the "single decision, policy, or plan" is vague. According to the Plaintiffs, the putative plaintiffs are PLS employees "who have not been paid for all hours worked." There is no showing that this was the result of a "single decision, policy, or plan." The stores at issue were in several cities and run by different store managers. Although defendant Lyons was the PLS district manager, he has testified that he does not have any responsibility for the short-term loan operations or employees at the PLS stores. (Lyons Decl. ¶ 4). Rather, the employees at each store report to their store manager and the store managers in the district report to Lyons. (Lyons Decl. ¶ 5).

Although the Plaintiffs object to the declaration of Moore, due to the fact that the video tapes have not been submitted into evidence, the Plaintiffs have not filed a motion to strike the declaration. While the "best evidence rule" (*Rule 1002 of the Federal Rules of Evidence*) is alive and well, *Rule 1006* permits summaries of voluminous video recordings, provided the tapes are made available to the other parties. As there is no showing that the tapes were made available to the Plaintiffs, the court will not [*25] base the current ruling on the contents of the Moore declaration. However, in the absence of a motion to strike, the Moore declaration remains as evidence, and the court notes in passing that the Moore declaration supports the Defendants' request to deny the motion to certify.

As the record before the court shows that the Plaintiffs have not met their burden of showing there are similarly situated putative plaintiffs who were subjected to the same decision, policy or plan by the Defendants, the motion for **conditional certification** of collective action will be **denied.**

Conclusion

On the basis of the foregoing, the Plaintiffs' motion to **conditionally certify** class [DE 12] is hereby **DENIED.**

Entered: December 3, 2013.

/s/ William C. Lee

William C. Lee, Judge

United States District Court

**Exhibit B**



30 of 48 DOCUMENTS

SANDRA KELLY, JANICE WALTMAN, AND SYLVIA PATINO, INDIVIDUALLY & ON BEHALF OF OTHERS SIMILARLY SITUATED, Plaintiffs, v. HEALTHCARE SERVICES GROUP, INC., Defendant.

Civil Action No. 2:13-cv-00441-JRG

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

2013 U.S. Dist. LEXIS 149204

October 16, 2013, Decided
October 17, 2013, Filed

**COUNSEL:** [*1] For Sandra Kelly, Janice Waltman, Sylvia Patino, Plaintiffs: Dorotha Michelle Ocker, LEAD ATTORNEY, Ocker Law Firm, Carrollton, TX; Maryna O Jackson, Timothy A Steadman, John Terrell Holleman, Holleman & Associates PA, Little Rock, AR.

For Healthcare Services Group Inc, Defendant: Brad Michael Kushner, Kenneth D Kleinman, Stevens & Lee - Philadelphia, Philadelphia, PA; James R Staley, Jeffrey C Londa, Ogletree Deakins Nash Smoak & Stewart - Houston, Houston, TX; Joseph D Shelby, Theresa M Zechman, Stevens & Lee - Lancaster, Lancaster, PA.

**JUDGES:** RODNEY GILSTRAP, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RODNEY GILSTRAP

**OPINION**

**MEMORANDUM AND OPINION**

Before the Court is Plaintiffs' Opposed Motion and Brief to Conditionally Certify Collective Action and Send Notice to Class Members Pursuant to *29 U.S.C. § 216(b)*. (Dkt. No. 11.) The Court held a hearing on October 2, 2013. Having considered the parties' written submissions and oral arguments, the Court **DENIES** the Motion.

Plaintiffs Sandra Kelley, Janice Waltman, and Sylvia Patino (collectively, the "Plaintiffs"), former employees of Defendant Health Services Group, Inc. ("HSG" or "Defendant"), bring this action on their own and on behalf of all other similarly situated [*2] employees of HSG pursuant to the provisions of the Fair Labor Standards Act, *29 U.S.C. § 201, et seq.* ("FLSA"). HSG is a corporation providing housekeeping, laundry, dining and nutrition services to various healthcare facilities in forty-eight states. Plaintiffs previously worked for HSG as Account Managers in HSG's housekeeping sector. Plaintiffs claim that HSG violated the FLSA by failing to pay Plaintiffs and other similarly situated employees for all hours actually worked and by failing to pay them at least one and a half times their regular pay rates for all hours worked in excess of forty in a work week. *See* Complaint at ¶ 51.

On July 5, 2013, Plaintiffs filed the instant Motion to Conditionally Certify Collective Action and Send Notice to Class Members. Plaintiffs seek to certify a nation-wide class consisting of "all Account Managers who were employed by HSG within a three years period preceding filing of this lawsuit, and were classified as salaried

employees and exempt from the requirement of [the FLSA], when in reality their work duties and responsibilities did not qualify them for exempt status or were paid hourly and were required to underreport their hours." To support [*3] their Motion for conditional class certification, Plaintiffs submitted the affidavits from six former HSG employees, including two of the named Plaintiffs, who previously worked as Account Managers in HSG's housekeeping sector.

*Section 216(b)* of the Fair Labor Standards Act authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court. *29 U.S.C. § 216(b)*. District courts have the discretionary power to conditionally certify a collective action and to authorize the sending of notice to potential class members pursuant to *§ 216(b)*, but certification is not mandatory. *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*.

Courts have used two approaches to determine whether collective treatment under *§ 216(b)* is appropriate: (1) the two-stage class certification set forth in *Lusardi v. Xerox, Corp., 118 F.R.D. 351 (D.N.J. 1987)*; and (2) the "Spurious Class Action" method outlined in *Shushan v. Univ. of Colorado, 132 F.R.D. 263 (D. Colo. 1990)*. The Fifth Circuit has discussed both approaches, but has not adopted a single specific approach. [*4] *See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995)* (finding it unnecessary to choose between the tests because either way district court erred in finding plaintiffs were not similarly situated), *overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003)*. Here, both parties agree that the Court should adopt the *Lusardi* two-step approach in deciding whether to certify this case as a collective action.

Under the *Lusardi* two-step approach, certification for collective action is divided into two phases: (1) the notice stage; and (2) the opt-in, or merits, stage. *Mooney, 54 F.3d 1207*. In the notice stage, the district court must determine whether to conditionally certify the class and issue notice to the putative class members. *Allen v. McWane, Inc., 2:06-cv-158, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006)*. Plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exist. *Id.* "This preliminary factual showing must be based on competent evidence in order to avoid stirring up unwarranted litigation." *Id.* (citation omitted). Given that the court only has minimal evidence, however, the standard [*5] for conditional class certification is a "fairly lenient one." *Mooney, 54 F.3d at 1213*.

No specific definition of the term "similarly situated" exists in the FLSA. In the Fifth Circuit, however, some district courts have recognized that "[t]he key consideration in determining whether the plaintiffs have satisfied this standard is that they must show there to be substantial allegations that potential members were together the victims of a single decision, policy, or plan." *See, e.g., Richardson v. Wells Fargo Bank, N.A., No. 4:11-cv-00738, 2012 U.S. Dist. LEXIS 12911, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012)* (quotations omitted). In making this determination, courts should consider whether there is evidence that the individual plaintiffs had similar "factual and employment settings" and whether there was a "common policy or plan" that affected the potential plaintiffs. *Id.* Even at the notice stage, **conditional certification** "should be **denied** if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Id.* The fundamental inquiry is whether the plaintiffs show "some identifiable facts or legal nexus that bind the claims so that hearing [*6] the cases together promotes judicial efficiency." *McKnight v. D. Hous., Inc., 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010)*.

As noted earlier, Plaintiffs seek to conditionally certify a nation-wide class consisting of all Account Managers employed by HSG within the three-year period preceding the filing of this lawsuit, who were allegedly misclassified as exempt employees under the FLSA. Plaintiffs appear to further seek the certification of a nation-wide class of all non-exempt Account Managers employed by HSG within the relevant statutory period, who were allegedly required to under-report their hours. [1] To support its proposed class definition, Plaintiffs submitted the affidavits from six former HSG employees, who previously worked as Account Managers at nine HSG facilities [2] located in Texas, Indiana and North Carolina. All six witnesses worked in HSG's housekeeping sector.

1    In its Motion to Conditionally Certify

Collective Action, Plaintiffs allege a single class consisting of both the exempt and the non-exempt Account Managers. (*See* Dkt. No. 11 at 2.) At the hearing, however, Plaintiffs conceded that the better approach would be to separate exempt and non-exempt Account Managers into [*7] two different classes.

2   Two witnesses used to work in different facilities.

Plaintiffs' evidence falls short of supporting its broad definition of a nation-wide class consisting of all HSG Account Managers from not only the housekeeping but also other service sectors such as the dietary sector. First, all of Plaintiffs' witnesses worked in HSG's housekeeping sector with none working in the dietary sector, thus leaving the Court with no basis to determine if Account Managers in the dietary sector are "similarly situated" as those in the housekeeping sector. Even within the housekeeping sector alone, HSG has provided services to over three thousand facilities in forty-eight states during the relevant statutory period, but Plaintiffs' alleged nation-wide class rests solely upon affidavits from former Account Managers who worked in nine facilities located in just three states. To be clear, Plaintiffs need not provide affidavits from employees working in every HSG facility to support a nation-wide class. However, absent broader evidence sufficient to show a "common policy or plan" that "bind[s] the claims" of potential plaintiffs, the Court is not persuaded that Plaintiffs have gone far enough [*8] to meet their burden. *See McKnight, 756 F. Supp. 2d at 801*. The affidavits from former employees working in only three states do not fairly and sufficiently represent the situations of other employees located throughout all forty-eight states, where Plaintiffs seek a nation-wide certification. *See Edwards v. KB Home*, No. 3-11-240 (S.D. Tex. Sept. 25, 2012) (granting the plaintiffs' motion to conditionally certify a nation-wide class when, aside from thirty-three declarations from salespersons in the Houston area, plaintiffs additionally submitted online job postings which advertised salesperson positions in eight different states (out of twelve in total) and each contained similar job descriptions for such position). Notably, Plaintiffs did not submit evidence of a national or even regional application.

In sum, Plaintiffs have failed to submit sufficient evidence to support their proposed nation-wide class. The evidence, however, does suggest the existence of certain Account Managers who are similarly situated as Plaintiffs. Thus, the Court deems it proper to permit Plaintiffs additional discovery to either obtain further support for its proposed class or to determine a lessor appropriate [*9] scope of its class definition. Accordingly, for the reasons stated above, the Court hereby **DENIES** Plaintiffs' Motion to **Conditionally Certify** Collective Action and Send Notice to Class Members **WITHOUT PREJUDICE.** If Plaintiffs choose to resubmit such motion, they shall do so within **ninety (90) days** from this date.

The parties are further **ORDERED** to jointly submit a proposed docket control order to the Court within **fourteen (14) days** from this date, which provides a defined period of immediate discovery limited to the certification issues discussed above.

**So Ordered and Signed on this**

**Oct 16, 2013**

/s/ Rodney Gilstrap

RODNEY GILSTRAP

UNITED STATES DISTRICT JUDGE